**12-15-00226-CV**

Richard Thompson, 610-436-5582, P.O. Box 463, West Chester, PA 19380

In the Twelfth Court of Appeals
1517 W. Front St., Suite 354
Tyler, Texas 75702
Tel 903 593 8471, Fax 903 593 8471

Appeal:_____

From: Cause No. 2014-0349-CCL2

Blackberry LC  (aka, Bob Anderson) fax 903 232 1881

vs.

Ethelwynn Bowen, et. al.


FILED IN COURT OF APPEALS
12th Court of Appeals District

SEP 1 4 2015
elKm

TYLER TEXAS
PAM ESTES, CLERK

### Appeal from an Illegal Taking

1 Defendant Richard Thompson hereby appeals, for himself and all others similarly situated, from final order of 8/3/15, **EXH. A,** taking some 162 acres of oil and gas production land (surface rights) from the heirs of The Estate of William McGeorge, said taking is fraudulent because the Executor, Royal McGeorge, and his lawyer, Bob Anderson, aka, Blackberry, colluded to tell heirs: "the land is worthless because drillers have the right to use it," when they knew reasonable rent was receivable for use of the land and that it was a valuable water resource for oil and gas production,  having a 2300 ft. frontage on the Sabine River.

2 Appellant/Defendant Thompson demands said order be vacated and judgment entered for the original heirs as per my uncontested appraisal of $507,300 filed 1/24/15, **EXH. B**.

3 **Background:** My Great Grandfather, William McGeorge left his estate to eight children, making the eldest, Royal, Executor.  All assets were disposed of except this 162 acre tract, which the second executor, Royal Jr. sold to his [our] lawyer, Bob Anderson for $600/acre based on the 2004 Richard Mcgee appraisal comparing it with range land.  I too was duped and on 1/27/06 signed a POA under threat of law suit - the proceeds promised were never distributed.

4 On or before 2013, Pltf. Anderson (who bought on the condition he perfect title) knew or should have known, that a $1/8^{th}$ share, belonging to Mable Shoemaker, was not signed over in his deal because her heir, John, died in 2003 with no heirs, and thus reverted, Anderson claims, to both John's  parents, and had to be redistributed as if from his father (unidentified) and

1

mother (Mabel), cutting Anderson's cost in half , the other half going into court registry; some heirs he paid (e.g., $135 for 1/720 of $97,200 to my sister Ellen Thompson), others [me] he sued without cause - whereupon I moved the court to dismiss, **EXH. C.**

5  **Statement of Facts:**

6  There has been no advertising, offering or bidding on these two parcels.

7  There has been no appraisal, auction, sale, or discovery of surface right value of the land.

8  The 10/23/14 trial was a farce, attorney ad litem John Moore defaulted on all my pleadings, announced he was ready for trial, then said nothing, a blatant betrayal of his clients: **EXH. D.**

9  On 11/18/14 I moved the court to rescind approval of trial 'Statement of Evidence," **EXH. E.**

10 Action by court merely legitimizes trespass by current users for a one-time fee of $75,000 less kickback of  $23,176; net "ownership interest," $51,823, is only a tenth of its nominal value.

11 It is unclear how the court arrived at $75,000 when Anderson claims he had paid $97,200.

12 Upon discovery of the tax assessment, $169,100, the low ball McGee appraisal, the exclusive and gated use by drillers, the duplicity of our "lawyer" Anderson and the unwarranted lawsuit, I not only opposed this unrequited taking, but repudiated my 1/27/07 POA as the product of deliberate deception, and I spoke for the class.

13 Anderson errs in assuming John Shoemaker's share reverts equally to his father's kin, it is a specific asset contributed solely by his mother and thus reverts wholly to her kin; while John was a joint product of his mother and father, the $1/8^{th}$ land interest was not - the deed was never put in joint name here or in Texas, title remained in her name in the McGeorge Estate.

14 On my Grandfather's (Harold's) share of Shoemaker, Anderson calculates  $1/5 \times \frac{1}{2} \times 1/8 = 1/80$, but the ½ is bogus, it all goes back; he gets an additional $1/40^{th}$. (Five original heirs alive at John Shoemaker's death).  It is now as if there were only seven children ever, each with 14.3% instead of 12.5%; the total ownership interest should be recalculated on this basis.

15 My share comes from Harold's 1/8th - he warned that his brother Royal was dumping land.

16 Royal's son and successor, Royal Jr., never gave an accounting of surface right users.

17 The property, locked at night, accommodates over 30 wells, pipe and electrical lines, tanks, roads, pumping stations and treatment facilities all compensable uses of surface rights.

2

18 Because Defendant's pleadings were unanswered and decisions made ex-parte, the appointment of Receiver Reader was spurious and $17,000 a misappropriation.

19 The Ad Litem fee is likewise unwarranted while I was an authentic representative for heirs. John Moore never answered my pleadings or sought discovery of the land's commercial value.

20 The Receiver was excused from making a formal appraisal, for "ethical reasons," and an arbitrary value of less than half the tax appraisal entered illegally in the Country registry.

21 Neither Plaintiff or Receiver has served Defendant any report or disclosed who is on his property or what is done - they misuse civil proceedings in concealing trespassers.

22 On 8/12/15 I filed a Praecipe to Strike Ex-Parte Order Authorizing Sale of Property, **EXH. F.**


23 **Argument:** The Executor and his successor failed to manage the property - his "lawyer" was in reality a "landman" for drillers enjoying the surface rights for free. Water was always pumped underground to push oil and gas into wells, and the advent of chemical fracking made the Sabine an even more valuable resource - part of the heir's surface rights.

24 A very reasonable rent of $3000/mo. would make this property worth $360,000 yielding 10%, or $750,000 at a 5%/yr. yield. $51,823 could be the yearly revenue for production uses.

25 Receiver made no attempt to find highest value because land was already at its highest and best use, and had been for years - at no cost, because of dereliction and collusion.

26 The court serves of the state, and Texas runs on oil - i.e., Defendants were shut out.

27 The surface rights had always been infringed and now are under lock and key occupation by undisclosed parties who rightly owe rental fees to the Estate of Wm. McGeorge.

28 Marjorie Thompson's interest was 1/24 (Harold's 1/8th split three ways): 4.1667% Now a third of the Mabel's 1/40th (or 2.5%) is added, .8333%, for a new total of 5%, on which her heirs, were duped. I can vouchsafe for Mother's siblings that they too were misled.

29 Harold's heirs, Marjorie, Miner and Elizabeth each own 5%, totaling 15% - I speak for them.

30 Heirs who sold to Tony Rolling were similarly misled and must be made whole.

31 Ethylwynn Bowen specifically recants her earlier quitrent to Rolling.

32 All heirs are similarly situated, must be made whole and compensated for past surface use.

33 **Prayer for Relief**:

34 Appellant Thompson, speaking for himself and all others similarly situated, demands that said order be vacated as the product of collusion and deception, the land be independently appraised at market value, advertised for six months, sold at public auction and the proceeds remitted pro-rata to heirs who have standing to share in its true market value.

35 Shares acquired under false pretenses shall be counted as zero, and those defrauded granted legal recourse within this cause. Anderson and Rolling must quit their claims and be repaid to whatever extent sellers are able. Anderson had no standing to buy from a Trustee who was in his debt and can recover from Royal McGeorge, both reimbursing the Estate for expenses incurred by their attempted disenfranchisement of minority shareholders.

36 Fees of $23,176.50 are negated because of fraud on the court (i.e., by the court).

37 Lastly, Appellant/Defendant Thompson moves this good court to appoint him Executive of the Wm. McGeorge Estate.

38 **Transfer of Records**: Appellant/Defendant hereby asks the Clerk of Gregg County Court at Law #2 to transfer the entire case file to the jurisdiction of the 12th District Appeals Court

**Certificate of Service**: Copies mailed 9/9/15

**Verification**: Sworn under penalty of law.

Richard Thompson
9/9/15

(Appeal to 12th District, Tyler, TX, 9-9-15.docx)

4

Address List

Gregg County Court at Law #2 (Judge Vincent Dulweber)
101 E. Methvin St. Suite 303  (Fax 903 237 2574)
Longview Texas 75601

Boon Shaver Echols Coleman & Goolsby, fax 903 759 3306
1800 NW Loop 281, Suite 303 (Tel. 903 759 3306)
Longview TX, 75604

Ethelwynn  Bowen
1128 Sky Hawk Mountain Road
Hiawasee, GA 30546

Thomas Yocum
2142 Pass Creek Road
Castlegar, British Columbia VIN4S9

Tony Rolling
P.O. Box 582
White Oak, TX 75693

Timothy Eckenrode
709 Wombat Way
Kissimmee, FL 34759-4224

Timothy Callahan

Christina Frank
3848 Anne Street
Drexel Hill, PA 19026

Joseph S. Klimczack, Jr.
7921 West Chester Pike, 2nd Flr.
Upper Darby, PA 19082

Robert A. Klimczack
57 South Church St.
Clifton Heights, PA 19018